EDGAR CHARPENTIER *et al. vs.* MARIE LOUISE CHARPENTIER.

NOVEMBER 9, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.    This action of general assumpsit was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiffs for $1057. It is before us on the defendant's single exception to this decision.

The defendant's husband, who was the father of these plaintiffs, died intestate June 16, 1933, and the defendant was appointed administratrix of his estate.    Besides administering her husband's personal estate, the defendant also collected the rents from certain realty which her husband owned at the time of his death.    This action was brought by these plaintiffs, being five of the six children and heirs at law of Louis Charpentier, to recover their proportionate share of the rents from the real estate, inherited by them, which were collected and retained by the defendant.    It is based upon the common counts and proceeds upon the theory that the defendant had received and retained money to which in law and justice she was not entitled.    The propriety of the form of action is not questioned by the defendant.

The testimony shows that the defendant individually signed practically all rent receipts of the tenants. It further appears that there was no decree of the probate court, nor was there any necessity for one, authorizing the appropriation by the administratrix of the rents for the payment of debts of the decedent.    Upon the settlement and allowance

of her final account as administratrix, which contained none of the rents collected or any reference thereto, the defendant required and received releases from four of these five plaintiffs, the fifth being a minor.

The consideration for each release, as expressed therein, was the exact amount of the distributive share, to wit, $247.87, to which each plaintiff was entitled according to the final account, filed by the defendant as administratrix, and allowed by the probate court. Each release stated that: "I, . . . in consideration of . . . to me in hand paid by Marie Louise Charpentier, Administratrix of the estate of Louis Charpentier . . . do for myself and my heirs . . . remise, release and forever discharge the said Marie Louise Charpentier, Administratrix, her heirs . . . from all, and all manner of action and actions, . . . which against Marie Louise Charpentier, I ever had, now have . . . ."

The defendant contends that these releases run to her as administratrix and individually, and therefore constitute a bar to recovery in the instant case by the plaintiff who signed them. Her counsel argues that each release should be construed as if it read: "I, . . . . . ., hereby remise, release and forever discharge the said Marie Louise Charpentier as administratrix *and individually* . . . from all and all manner of actions which against the said Marie Louise Charpentier as Administratrix *and individually* I ever had, now have . . . ." The trial justice, he claims, was in error in deciding that these releases were restricted by their language to the defendant solely in her capacity as administratrix, and did not run also to her individually.

In construing the releases, it was the duty of the trial justice to ascertain the intention of the parties as shown by the instruments, in the light of the circumstances surrounding their execution. *Swinburne* v. *Swinburne,* 36 R. I. 255.

There is sufficient evidence in the record before us showing that the defendant collected and retained the rents from

realty which, upon the death of Louis Charpentier, descended to his children, five of whom are plaintiffs here. The sixth child did not join in these proceedings. The collection and retention of these rents were not authorized by the probate court and were not a necessary part of her duties as administratrix. The consideration of each release is exactly the amount of each plaintiff's distributive share in the estate, exclusive of any rents.

If they were intended to discharge the defendant as administratrix, *and individually,* there is no adequate explanation in the record for the failure to express it plainly. We think it more reasonable from their language to consider that they run either to the defendant as administratrix or to her as an individual. But the amount of each release, its identity with the distributive share of each child in the estate of his father, the naming of the defendant *as administratrix* in the consideration and releasing clauses, and the other circumstances in the record, point strongly to an intent by the releasors to discharge the defendant only in her capacity as administratrix. If this language is ambiguous, it should be noted that it was drafted in that form on behalf of the defendant.

The trial justice found that such releases were not intended to, and did not, release the defendant *individually* from paying over to the children their proportionate share of the money which she had collected as rent. We cannot say that this finding is clearly erroneous.

The trial justice further found that the defendant was accountable for rental payments received by her in the total sum of $1287. This sum represents payments by eight tenants from time to time and in varying amounts over a period of about a year. The correctness of many of the payments of rent and their actual receipt by the defendant was admitted by her or her counsel. The receipt of other such payments by her was found by the trial justice as a fact upon conflicting evidence.

However, two of the items which were allowed by the trial justice as proper charges against the defendant were clearly improper. The first item refers to certain payments of rent by a tenant, totaling $59. The undisputed testimony shows that these particular payments were not made to the defendant, but were in fact made to one of the plaintiffs. In the absence of any proof that these payments were made to the defendant or to any one authorized by her to receive the same, the defendant was not properly chargeable therewith.

The second item concerns the sum of $60, which was admittedly found by the defendant in her husband's safe after his death and for which she, as administratrix, had allegedly not accounted to the plaintiffs. The trial justice added this sum to the total rent collection of $1287, making a total of $1347 for which she was held accountable. It was error to charge the entire sum of $60 to this defendant. Under our statutes on the distribution of personalty, the defendant, as wife surviving her husband, would have been entitled, under the circumstances of this case, to at least one half of this $60 in her own right. G. L. 1923, chap. 367, sec. 9. Moreover, this item was no part of the rents collected by the defendant. It was properly an item which came to the defendant's possession as administratrix and the plaintiffs have insisted that their releases ran to her as administratrix, which would release her from all matters arising out of the administration of the estate. Therefore, the allowance of this item in the decision against the defendant was erroneous.

In addition to the above items, the trial justice apparently overlooked the important consideration of general laws 1923, chapter 380, section 1, which reads as follows: "The widow of any person dying intestate or otherwise shall be endowed of one full and equal third part of all the lands, tenements and hereditaments, whereof her husband, or any other to his use, was seized of an estate of inherit-

ance, at any time during the intermarriage, to which she shall not have relinquished her right of dower by deed, except in the cases provided for in section twenty-seven of this chapter."

Under this chapter, the defendant, as the widow of Louis Charpentier, intestate, had a vested dower interest in his realty. The plaintiffs therefore became owners of five-sixths of the fee of that realty, subject, however, to the defendant's dower. She had not released that dower in any way at the time of trial and no formal assignment of it had been made. She, therefore, was entitled, according to the language of this statute and the peculiar dealings between the parties here, to a full one-third part of all the rents which theretofore had been collected by her from the realty, and which were erroneously charged against her by the decision of the trial justice.

All other findings of the trial justice on numerous other items upon the conflicting evidence are sustained, as we cannot say that such findings are clearly wrong. *Walsh* v. *Carroll,* 54 R. I. 497; *Cranston Dressed Beef Co.* v. *Packers Outlet Co., Inc.,* 57 R. I. 345, 190 A. 29.

According to our view of the evidence and law, the trial justice should have rendered a decision for the plaintiffs for $638.59. This figure is arrived at by adding only the amounts of the various items of rent with which the defendant was properly chargeable, making the total sum of $1228, and by deducting therefrom the credit of $78.56 for money admittedly expended by her in maintaining the property, leaving a balance of $1149.44. Deducting then the further credit of one-third of the above net balance, the equivalent of defendant's dower, leaves a total net balance of $766.30 due to all the children of Louis Charpentier. As the plaintiffs in the instant case are only five of the six children, who inherited the property from their father, they are entitled to only five-sixths of the last total net sum, which makes the sum of $638.59 as the amount of a decision for them.

The defendant also contends that the plaintiffs, by their conduct in their dealings with the defendant as administratrix, waived any right they may have had to recover, in this action, money that the defendant received as rent. The trial justice found that there was no sufficient evidence of a waiver. From an examination of the transcript, we cannot say that his finding in this regard was unwarranted.

The defendant's exception is sustained on the ground that the decision of the trial justice is excessive in the manner and to the extent above set forth.

The case is remitted to the superior court for a new trial, unless on or before November 22, 1937, the plaintiffs shall file in said court a remittitur of all of said decision in excess of $638.59. In case the plaintiffs shall file such remittitur, the superior court is directed to enter judgment on the decision as reduced by the remittitur.

*Eugene L. Jalbert, Adonat J. Demers,* for plaintiffs.
*Ovila Lambert,* for defendant.