Sosman, J.
Plaintiff Wieslaw Deptula has brought the present action against National Diecasting Machinery Division of Racine Federated, Inc. (Racine) for personal injuries he sustained while using a diecasting machine. The machine in question was manufactured by National Diecasting Machinery, Inc. (National), which has since been dissolved. Plaintiffs have sued Racine as a successor corporation to National. Racine has now moved for summary judgment arguing that, on the undisputed facts, it does not bear liability as a successor to National. Deptula opposes the motion on the grounds that Racine impliedly assumed the liabilities of National and was a continuation of National. For the following reasons, Racine’s motion is denied.
Facts
On December 9, 1991, Deptula injured his hand in a diecasting machine. The machine had been manufactured by National, a Rhode Island corporation, and sold to plaintiffs employer, Kennedy Diecasting.
By the time of plaintiffs accident, National had been dissolved. Racine had purchased the assets of National pursuant to a purchase and sale agreement dated April 3, 1990. In that agreement, Racine purchased essentially all the assets of National and agreed to continue National’s business in Rhode Island, using its “best efforts” to maintain National’s relationships with suppliers, vendors and customers. The purchase agreement also required that two key employees remain under a written employment agreement.
Subsequent to the purchase of assets, Racine continued to manufacture the same equipment as National. Racine maintained National’s business in Rhode Island and maintained National’s relationship with suppliers, vendors, and customers. The same name was kept, with “National Diecasting Machinery, Inc.” becoming the “National Diecasting Machinery Division” of Racine. Almost all (87%) of the employees of National continued to be employed by Racine in the National division. The remaining employees included the same Manager of Manufacturing, whose employment agreement had been a term of the asset purchase agreement. Another key employee, Lyn Johnson, a former officer of National, is now a Vice President of Racine.
National was dissolved by execution of Articles of Dissolution on April 16, 1990.
*661 Discussion
Racine argues that, as a matter of law, it is not liable as a successor to National. “Generally, a company that purchases the assets of another is not liable for the debts of the transferor company.” H.J. Baker & Bro. Inc. v. Orgonics Inc., 554 A.2d 196, 205 (R.I. 1989), citing Cranston Dressed Meat Co. v. Packers Outlet Co., 190 A. 29, 31 (R.I. 1937).[1] However, the purchasing entity may be held liable for the debts of the acquired entity when “the new company is merely a continuation or a reorganization of another, and the business or property of the old corporation has practically been absorbed by the new.” Id. Factors to be considered in determining whether there is a “continuing” entity include (1) a transfer of corporate assets, (2) less than adequate consideration for the transfer, (3) the new company’s continuation of the business of the transferor, (4) the existence of at least one common officer or director who is instrumental in the transfer, (5) the transferor’s inability to pay its creditors (either in fact or by law) as a result of the transfer, (6) common identity of officers, directors and stockholders, (7) continued use of the same space, and (8) service to the same client base. Id.
In the present case, plaintiff has come forward with sufficient evidence to defeat Racine’s motion for summary judgment. Plaintiff has demonstrated that there was a transfer of corporate assets, that Racine continued the identical business of National, that Racine continued to operate in the same location and to service the same customer base, that Racine continued to employ National’s employees, that Racine continued the business under the National name (as the “National Diecasting Machinery Division” of Racine), and that the transfer rendered National incapable of paying its creditors. There is at least one officer in common between the former entity and the acquiring entity.
Racine argues that this case is analogous to Carriero v. Rhodes Gill & Co., United States District Court, D. Mass., Civil Action No 91-10515-RGS (January 13, 1995), in which the court granted summary judgment for defendant on the ground that it could not be held liable as successor to the distributor of allegedly defective machinery. Carriero is easily distinguishable from the present case. Indeed, the decision in Carriero expressly points out the absence of the very facts that are central to the present case: “Main did not purchase any of Leach’s assets. None of Leach’s inventory was bought by or transferred to Main. Main dissolved without leaving any unpaid liabilities. Main did not take over Leach’s business accounts or service any of Leach’s clients.” Slip op. at 4. In the present case, Racine purchased National’s assets, acquired all its inventory, and took over all its accounts and clients.
Plaintiffs have also pointed to certain provisions in the purchase and sale agreement that would make no sense and/or would be superfluous if Racine were not assuming National’s liabilities. The agreement contained no express provision disclaiming any assumption of liabilities. The theory of a “continuing” entity is thus buttressed by at least some evidence that Racine impliedly assumed the liabilities of National.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is DENIED.

Both parties agree that the law of Rhode Island applies to the question of Racine’s status as successor to National. The asset purchase agreement provided that it was to be construed in accordance with the law of Rhode Island, and the transfer itself occurred in Rhode Island.