DECISION
This is an asbestos-related product liability case brought against a number of corporate defendants. In four separate cases, Defendant Detroit Diesel Corporation ("DDC") moves for summary judgment pursuant to Super. R. Civ. P. 56 in against Plaintiffs — Arletta Cone as Executrix of the Estate of Robert Cone and as *Page 2 
Surviving Spouse, Lisa Kroskob and Craig Kroskob, [1] Janice Makin as Personal Representative of the Estate of Joseph F. Fusco, and Alan Messerlian and Jo-Ann Messerlian as Surviving Spouse (hereinafter "Plaintiffs"). Plaintiffs object to this motion. DDC moves for summary judgment on two grounds, lack of successor liability for products manufactured or distributed prior to 1988 and lack of proximate cause for those products distributed after 1988. Because these motions contain common issues, the Court will address them collectively.
 I Facts and Travel
In the above-captioned claims, Plaintiffs allege that they were exposed to a variety of asbestos-containing products, including DDC manufactured Detroit Diesel engines, which caused and/or contributed to the development of mesothelioma. Prior to 1988, General Motors ("GM") Detroit Diesel Division manufactured the Detroit Diesel engines that DDC now manufactures. On January 1, 1988, GM sold certain assets of the GM Detroit Diesel Allison Division to a joint venture between GM and Penske Corporation. This joint venture became DDC. At the time of its sale, GM owned forty percent, and Penske Corporation ("Penske") owned sixty percent of DDC. In 1989, Penske acquired another twenty percent of DDC. Subsequently, in 1993, Daimler-Benz purchased GM's remaining interest in DDC. As part of the 1988 sale, the GM Detroit *Page 3 
Diesel-Allied Division agreed to assume all liabilities and indemnify DDC for any products manufactured by the GM Detroit Diesel Allison Division prior to January 1988.
In 2009, after GM filed for bankruptcy, DDC removed these actions to federal court. In 2010, the federal court remanded the actions to Rhode Island state court.
DDC now moves for summary judgment on two grounds. First, it argues that it cannot be liable for any of Plaintiffs' exposure to asbestos prior to 1988 because, it alleges, when one company sells or transfers all of its assets to another company, that purchasing company is not responsible for the debts and liabilities of the selling company merely because it acquired the seller's property. Accordingly, it contends that as it was not a continuation of the GM Detroit Diesel Allison Division, as a matter of law it cannot be liable for any products manufactured or distributed under GM. Additionally, DDC argues that it cannot be liable for any of Plaintiffs' exposure from products manufactured after 1988 because of a proximate cause issue. Specifically, DDC maintains that it did not manufacture, sell, and/or distribute DDC products that contained asbestos after that date. DDC avers that most, if not all, of the DDC products in question were manufactured prior to 1988.
 II Standard of Review
In deciding a motion for summary judgment, a trial justice considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits and determines whether these documents, when viewed in a light most favorable to the nonmoving party, present a genuine issue of material fact. Kirshenbaum v.Fidelity Fed. Bank, F.S.B.,941 A.2d 213, 217 (R.I. 2008) (citations omitted); Lavoie v.North East Knitting, Inc., *Page 4 918 A.2d 225, 227-28 (R.I. 2007) (citing Super. R. Civ. P. 56(c));Delta Airlines, Inc. v. Neary,785 A.2d 1123, 1126 (R.I. 2001) (citations omitted). It is well settled that a genuine issue of material fact is one about which reasonable minds could differ. See, e.g., Brough v.Foley, 572 A.2d 63, 67 (R.I. 1990).
The moving party bears the initial burden of establishing that no such issues of material facts exist. Giuliano v. Giuliano, 949 A.2d 386, 391 (R.I. 2008). If the moving party is able to sustain its burden, then the opposing party must demonstrate the existence of substantial evidence to dispute that of the moving party on a material issue of fact. Parker v. Byrne,996 A.2d 627, 632 (R.I. 2010) (citation omitted);Giuliano, 949 A.2d at 391 (citing Benaski v. Weinberg,899 A.2d 499, 502 (R.I. 2006); Superior Boiler Works,Inc. v. R.J. Sanders, Inc., 711 A.2d 628, 631-32 (R.I. 1998)). Although it need not disclose all of its evidence, the party opposing summary judgment must demonstrate that evidence beyond mere allegations exists to support its factual contentions.See, e.g., Nichols v. R.R. Beaufort Assocs.,Inc., 727 A.2d 174, 177 (R.I. 1999) (citations omitted);Ludwig v. Korwal, 419 A.2d 297, 301 (R.I. 1980). The trial judge reviews the evidence without passing upon its weight and credibility, and will deny a motion for summary judgment where the party opposing the motion has demonstrated the existence of a triable issue of fact. See Mitchell v. Mitchell,756 A.2d 179, 181 (R.I. 2000); Palmisciano v. Burrillville RacingAss'n, 603 A.2d 317, 320 (R.I. 1992). *Page 5 
 III Analysis A Successor Liability
Plaintiffs maintain that summary judgment is inappropriate in this case because evidence exists to find that DDC is a mere continuation of Detroit Diesel Allison Division of GM and therefore may be liable for products manufactured and distributed prior to 1988. Moreover, Plaintiffs argue that summary judgment is premature because they need further discovery with respect to DDC as a "mere continuation" of its selling company.
It is well settled that a company which purchases the assets of another, if there is no actual consolidation or merger, is not liable for the transferor's debts and obligations. H.J.Baker Bro., Inc. v. Orgonics, Inc.,554 A.2d 196, 205 (R.I. 1989) (citing Cranston DressedMeat Co. v. Packers Outlet Co.,57 R.I. 345, 348, 190 A. 29, 31 (1937)). Nevertheless, this rule is subject to exception when the "new company `is merely a continuation or a reorganization of another, and the business or property of the old corporation has practically been absorbed by the new.'"Id. (quoting Cranston Dressed Meat Co.,57 R.I. at 348, 190 A. at 31). This rule, known as successor liability, requires an examination of the facts and circumstances of a particular case to find whether the new company constitutes a mere continuation of the transferor company. Id. (citingCranston Dressed Meat Co., 57 R.I. at 349, 190 A. at 31);see also Ed Peters Jewelry Co., Inc. v. C J Jewelry Co.,Inc., 51 F. Supp. 2d 81, 92 (D.R.I. 1999) ("Courts have recognized that [the successor liability] determination is highly fact dependent." (citation *Page 6 
omitted)). In H.J. Baker Brothers, Inc., the Rhode Island Supreme Court fleshed out this rule explaining five persuasive criteria in finding a continuing entity:
 "(1) there is a transfer of corporate assets; (2) there is less than adequate consideration; (3) the new company continues the business of the transferor; (4) both companies have at least one common officer or director who is instrumental in the transfer; and (5) the transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law." 554 A.2d at 205.
The Court also noted that criteria such as the continued use of office space and service to the same client base may be criteria in a determination to find a continuing entity.Id. (citations omitted).
In the present case, Plaintiffs have presented a material issue of fact as to whether DDC was a mere continuation of its transferor company. Specifically, Plaintiffs have established, for example, that DDC originally operated in the same place as the transferor company and at least the DDC corporate representative was a corporate representative at GM prior to the sale. Seeid. (finding evidence of a "mere continuation" through the same principal officer in both entities, selling identical products, and operating from the same manufacturing plant as the selling company). As this issue is highly fact determinative, summary judgment is inappropriate for these pre-1988 manufactured products because Plaintiffs have presented an issue warranting further discovery, as well as a material issue of fact. Seeid. (citation omitted); see also Ed Peters JewelryCo., Inc., 51 F. Supp. 2d at 81 (citation omitted). *Page 7 
 B Liability for Post-1988 Products
Plaintiffs further argue that insufficient discovery has occurred for summary judgment for the post-1988 products. Additionally, Plaintiffs contend that summary judgment is inappropriate because they have established, in the Kroskob matter, exposure to asbestos from DDC engines manufactured after 1988.
Under the liberal Rhode Island discovery rules, an attorney may request a reasonable time for discovery prior to summary judgment. See Mill Factors Corp. v. L. S. Bldg. Supplies,Inc., 103 R.I. 675, 240 A.2d 720 (stating that courts are liberal with their discretion in giving the party opposing a summary judgment motion full opportunity for discovery to establish a genuine issue which may exist); Robert Kent et al., Rhode IslandCivil and Appellate Procedure § 26:1. In this case, Plaintiffs had to litigate various issues in federal court as a result of GM's bankruptcy in 2009. In 2010, the federal court remanded the case to Rhode Island Superior Court. As a result of the sinuous route in the litigation of these matters, this Court finds that further discovery is reasonable and necessary for Plaintiffs' cases. Accordingly, summary judgment would be premature in this matter.
Even if the motion were not premature, this Court finds that Plaintiffs have represented a material issue of fact, making this case inappropriate for summary judgment. Lavoie,918 A.2d at 227-28. In asbestos litigation, the plaintiff must identify the Defendant's asbestos product and establish that the product was a proximate cause of his or her injury.Celotex Corp. v. Catrett, 477 U.S. 317, 319-20 (1986). In this case, Plaintiffs have established a material issue of fact by showing the possibility that DDC *Page 8 
gaskets may have contained asbestos. Specifically, in DDC's corporate representative's deposition, he states that the majority of gaskets were asbestos-free by 1987-1988. Additionally, in Plaintiff Craig Kroskob's affidavit, he testifies that he removed DDC asbestos-containing gaskets before and after 1988.
As found in previous cases, this Court reiterates that the question of whether a product contains asbestos is an issue for a jury to determine. Benoit v. A.W. Smith Corp.,2009 WL 3328525, 4 (R.I. Super. 2009); Totman v. A.C. and S.,Inc., 2002 WL 393697, 4 (R.I. Super. 2002). This issue will not only involve credibility determinations for a jury, but also proximate causation which is "usually a question for the trier of fact that cannot be determined on summary judgment." Kent,Rhode Island Civil and AppellateProcedure § 56:2 (citing Martin v. Marciano,871 A.2d 911, 918 (R.I. 2005)). The trial justice's role in considering a proposed summary judgment motion "is not to cull out the weak cases from the herd of lawsuits waiting to be tried. Rather only if the case is legally dead on arrival should the Court take the drastic step of . . . granting summary judgment."Mitchell v. Mitchell, 756 A.2d 179, 185 (R.I. 2000). Reviewing the facts in the light most favorable to the nonmoving party, the Plaintiffs in these cases have presented contradictory evidence as to the possible existence of asbestos in DDC products distributed or manufactured after 1988. Accordingly, summary judgment must be denied.
 IV *Page 9 Conclusion
The Plaintiffs have set forth a prima facie case in which there are genuine issues of material fact to be decided at trial. Accordingly, the Defendant's motion for summary judgment is denied. Counsel shall prepare an appropriate order for entry.
[1] Defendant maintains that in the Kroskob matter, Colorado law is applicable. Nevertheless, it concedes that for the sake of this motion, Rhode Island and Colorado law are materially the same. Accordingly, this Court will apply Rhode Island law to all matters in this motion. See National Refrigeration,Inc. v. Standen Contracting Co., Inc.,942 A.2d 968, 973-74 (R.I. 2008) ("A motion justice need not engage in a choice-of-law analysis when no conflict-of-law issue is presented to the court."). *Page 1